ROLETTE vs. ROLETTE and another.

HUSBAND AND WIFE—DEED FOR SEPARATE MAINTENANCE.    A deed
entered into between husband and wife of the one part, and a trustee
of the other, after a separation of the husband and wife, for the purpose
of securing to the wife a separate maintenance, is valid, and will not
be set aside by a court of equity, at the suit of the husband, as being
against the policy of the law.

APPEAL from the District Court for *Crawford*
County.

On the 22d of September, 1834, *Joseph Rolette*, and
*Jane F.*, his wife, *having been for some time living separately and apart from each other*, entered into an indenture with *Bernard W. Brisbois*, a trustee mutually chosen,
by which, among other things, *Joseph Rolette* covenanted
to the trustee to furnish and provide a separate maintenance for his said wife, as specified in said deed.
After some time the husband refused to furnish the support and maintenance for his wife according to the terms
of the deed, and *Brisbois*, the trustee, commenced an
action of covenant to recover damages for the refusal.
Pending the action, on the 10th of March, 1840, another
indenture was entered into between the said *Rolette* and
*wife* of the one part, and the said *Brisbois* as a trustee
of the other, which recited: "That whereas circumstances have for several years last past prevented the
said *Joseph Rolette* and *Jane F. Rolette* his wife, from
living together in the relation of husband and wife; and
whereas the said *Jane* still chooses to live separately and
apart from her said husband, and the said parties have
agreed that she shall do so;" and then provided, that
in consideration of the obligation of the said *Joseph* to
support his said wife suitably to her condition in life,
and in consideration of five dollars to him paid, he, the
said *Joseph*, granted to the said *Brisbois*, in trust for the
sole and separate use of his wife, an annuity of the
yearly sum of $800, payable quarterly, for the life of

the wife. By subsequent provisions of the deed, the action of covenant was to be dismissed, and all causes of action for which it was commenced were released, and the deed of the 22d September, 1834, was canceled. The payment of the annuity, and the covenants of the latter deed, were secured by a bond to the trustee in the penalty of $30,000, and a mortgage upon real estate at Prairie du Chien.

*Joseph Rolette* filed his bill in equity, in the Crawford district court, against his wife and the trustee, setting up the latter deed, bond, and mortgage, and also the deed that was canceled; charging that the separation was of her will and not of his; that he was willing to support her at his own house, and that the said deed, bond, and mortgage were without any sufficient consideration, contrary to the whole policy of the law in relation to marriage, and against the interest, order, and happiness of society. The bill prayed that the said deed, bond, and mortgage should be surrendered up and canceled.

To this bill the defendant filed a general demurrer, and at the October term, 1842, the district court sustained the demurrer and entered a decree dismissing the bill with costs. From this decree the complainant appealed to this court.

*Ben C. Eastman*, for appellant:

Contracts for the separation of husband and wife, and for a separate maintenance, founded on such separation, have undergone great scrutiny in the English and American courts of late years. The current of modern decisions is against the validity of all agreements of the kind.

The case of *Rogers v. Rogers*, 4 Paige, 516, decided in New York in 1834, was where a contract for a separate maintenance had been entered into between the husband and wife with a trustee. In that case the chancellor said: "It is impossible for a *feme covert* to make *any* valid agreement with her husband to live separately from him, in violation of the marriage contract and the duties she owes to society, unless it be done under the sanction

of a court of chancery, and then *only* when the conduct of the husband would entitle the wife to a decree for a separation. The law of the land does not sanction a voluntary agreement for a separation between husband and wife."

The ecclesiastical courts in England have decided that it is impossible for the parties in marriage, lawfully to relieve each other from their reciprocal duties, which the relation of husband and wife impose upon them. Those courts consider it an *illegal contract*, exhibiting a dereliction of those mutual offices which the parties are not at liberty to desert; an assumption of a false character, contrary to the real *status personæ*, which they have contracted to observe and abide by. In *Rogers v. Rogers*, the chancellor referred to the case of *Westmeath v. Westmeath*, 2 Hagg. Eccl. Rep. 238; and also to the case of *Mortimer v. Mortimer*, id. 543. The case of *Westmeath v. Westmeath* was an application to the consistorial court for a restoration to conjugal rights. In December, 1817, in consequence of the brutal conduct of Lord Westmeath, a deed of separation was executed to a trustee, providing for a separate maintenance. They, however, continued to live together until 1818. In November, 1818, a new instrument of separation was executed, and £300 per annum settled upon the lady. This deed recites that disputes and difficulties had arisen between the parties, and "that they were on the point of living separate and apart, but by the mutual intervention of friends, she had consented to live and cohabit with him after the execution of the deeds." In June, 1819, the parties finally separated, and this bill was filed to enforce conjugal rights; and at the same time, Lord Westmeath filed his bill in the chancery court, to have these deeds delivered up to be canceled. To the bill in the consistorial court, these deeds were pleaded in bar. That court decided that Lady W. should return to her husband; an appeal was taken, and in Hilary term, 1827, the case was decided by Sir J. Nicoll. After the

Rolette vs. Rolette and another.

deeds of separation of 1818 were executed, no matrimonial cohabitation took place between the parties, but to conceal their separation from the world, Lord W. continued to occupy a room in the house until June, 1819. The decision of the consistorial court was reversed, but it was on account of the cruel treatment of the husband, and a separation was decreed, which decision was subsequently confirmed by the High court of Delegates. The court here considered the deed of separation no bar to the action, but enforced its terms *by way of settlement upon the wife*, taking the deed which was agreed upon between the parties as a guide for the amount of the settlement which was proper to be made.

The case of *Lady Mortimer v. Lord Mortimer*, was also a bill for a restoration of conjugal rights. A deed of separation was entered into between the parties in 1811. In 1816, the bill was filed. Sir WILLIAM SCOTT, in commenting on this deed of separation which was pleaded in bar in this case, says: "This court considers deeds of separation as *illegal contracts*, and not pleadable, and entirely insignificant. They imply a renunciation of stipulated duties which the parties are not at liberty to desert; from the solemnities of a contract, from which the parties by their own act, cannot relieve themselves."

In the case of *Carson v. Murray*, 3 Paige, 483, the Chancellor says: "An agreement for a separation cannot be supported unless the separation has *already* taken place, or is to take place *immediately* upon the execution of the deed." He also decided, that such an agreement will be rescinded, if the parties afterward cohabit or live together for ever so short a time. "It may well be doubted (says he), whether public policy does not *forbid* any agreement for a separation between husband and wife; and whether it does not require that such an agreement should be limited to cases, where by the previous misconduct of one of the parties, the other is entitled to have the marriage contract dissolved by a

decree of court." He refers to the case of *St. John v. St. John*, 11 Vesey, 526, where Lord ELDON held the same doctrine precisely; and also to the case of *Westmeath v. Westmeath*, 1 Jac. 126; 4 Eng. Ch. 55.

In the case of *Titley v. Durand*, 7 Price's Exch. 577, the court decided "that a deed between husband and wife and a trustee, covenanting to pay the wife an annuity in case she should live separate and apart from him, was *void*, as being a deed made in contemplation of a future separation, and was therefore contrary to the policy of marriage; and that a plea to an action of covenant upon such a deed, that the parties afterward lived together, is a good plea; and that a deed could not be made providing for a future separation of husband and wife.

In the case of *Marshall v. Rutton*, 8 T. R. 545, Lord KENYON says: "An agreement to live separate is a contract supposed to be made between *two persons* who in law are but *one*, and on that account are not able to contract with each other, which sweeps away the whole foundation of its legality, and consequently, the whole superstructure must fail. This objection meets the plaintiff *in limine*. Such a contract cannot be valid, which has for its object, the contravention of the whole policy of the law relating to domestic life."

In the case of *Warrall v. Jacob*, 3 Merivale, 268, the master of the rolls said: "The court will not carry articles of separation into execution, and that such deeds are void."

In the chancery suit of *Westmeath v. Westmeath*, 1 Jac. 126–144, before cited, the Lord Chancellor says: "If the question whether the court could or would not enforce articles of this sort was not prejudged by any decision, I should say, I think no court ought to act on them."

The Chancellor, in *Rogers v. Rogers, supra*, says: "In looking over the cases, which are extremely well collected in Roper, I perceive that it seems to have struck every one as extraordinary, that such deeds should ever

have been supported. The law has imposed upon husband and wife duties of the most sacred nature, which no court should allow them to disregard.''

The current of authorities, supported by the soundest reason, is against the validity of such deeds, and sustains the case of the appellant in the cause under consideration.

*T. P. Burnett*, for appellees :

The distinction does not seem to have been drawn between deeds of *separation* and deeds *to secure a separate maintenance;* nor between contracts for a separation that has *actually taken place*, and contracts providing for a *future separation.*

Deeds of separation and for separate maintenance were formerly sustained, almost without limitation or restriction, in the courts, both of law and equity, in England. One of the oldest cases in the books, is that of *Gawden v. Draper*, 2 Ventr. 217, decided in 1690. That was an action of covenant on an indenture, whereby the defendant covenanted that his wife should live separate and apart from him until both should give notice in writing, attested by two witnesses, to cohabit again, and that during the separation he would pay the plaintiff £300 per annum, in quarterly payments, for his wife's maintenance. The action was brought to recover £75, for one-quarter of the annuity then in arrear. The defendant pleaded in bar a subsequent indenture between the defendant and wife of one part and the plaintiff of the other, which reciting the first indenture, and that the defendant and his wife did then cohabit, and that it was the true intent and meaning of all parties that so long as they did cohabit, the said annuity should cease ; it was therefore covenanted by the plaintiff that so long as the defendant and wife should cohabit, the defendant should be saved harmless from the said annuity, and might retain it, and averred that ever since the last indenture they did cohabit. The plaintiff replied that they did not cohabit *modo et forma*, etc. ; to which the defendant demurred. The court decided that unless

the cohabitation was according to the first indenture, it was no bar to the action, and gave judgment for the plaintiff.

It was ruled by Lord HOLT, C. J., in the case of *Todd v. Stokes*, 1 Salk. 116, that where a husband and wife part by consent, and he secures to her a separate maintenance, and pays it according to agreement, he is not answerable for necessaries furnished her. The same doctrine was recognized in the more modern case of *Nurse v. Craig*, 5 Bos. & Pul. 148. These decisions can only be sustained by acknowledging the validity of the contract for separate maintenance.

The courts of common law went so far upon this subject, that the King's Bench, in the celebrated case of *Corbett v. Poelnitz*, 1 T. R. 5, decided in the time of Lord MANSFIELD, that a *feme covert*, living apart from her husband by deed of separation, and having a large maintenance settled upon her, beyond the control of the husband, might contract, sue and be sued as a *feme sole*. This decision was in 1785, and was considered, so far as it established the powers of the wife to act as a *feme sole*, as a dangerous innovation of the ancient law; and its authority was assailed from time to time, until in the case of *Marshall v. Rutton*, 8 T. R. 545, the court of King's Bench decided, in 1800, that a *feme covert* could not contract, and sue and be sued, as a *feme sole*, though she be living apart from her husband and have a separate maintenance secured to her by deed. That the only way in which a separation can be safe and effectual is, by having recourse to trustees, in whom the property of which it is intended the wife shall have the disposition, may vest, uncontrolled by the husband, and it would fall within the province of a court of equity to enforce such a trust. It will be perceived that the point decided in the latter case, which is the one referred to by the appellant, was not on the *validity of any* deed for a separation or separate maintenance, but on the *effect* of such

a deed; whether the wife under it could act, sue and be sued, as a *feme sole*.

Afterward, the case of *Rodney v. Chambers*, 2 East, 283, was decided in the King's Bench in 1802. That was an action of covenant by the trustees, upon a deed, which provided, among other things, that in case of a future separation of the husband and wife, with the consent of the trustees, the husband should pay to the trustees £200 per annum in trust for the wife for life. The declaration averred a separation with the consent of the trustees, and that the annuity of £200 for one year was in arrear and unpaid. The point at issue submitted to the court was, whether such a covenant was valid and effectual; it being contended there, as it is here, that it was contrary to the policy of the law, and subversive of good morals. But the court, after a full review of the authorities gave judgment for the plaintiffs.

In *Lord Vane's Case*, 13 East, 171, the parties had separated, and afterward agreed to cohabit together, upon which occasion, articles were entered into, by which he covenanted, that if she should afterward desire to live apart from him, he would not molest her. After this, in consequence of ill treatment, they separated a second time, and upon articles of the peace being exhibited against him, the validity of the deed was not questioned by the court.

In later cases, it has been decided, that in actions on deeds for separate maintenance, brought by trustees against the husband, it is no bar to the action to plead that the wife had committed adultery. 2 Barn. & C. 547; 8 Bing. 256; and the case of *Field v. Ferrars*, 1 N. R. 121.

Chancellor KENT (2 Com. 513) says, that the rule laid down in *Todd v. Stokes*, and *Nurse v. Craig*, was adopted in all its parts, in *Baker v. Barney*, 8 Johns. 72.

In *Fenner v. Lewis*, 10 Johns. 38, where the husband and wife had agreed to articles of separation, and a third person became a party to the instrument, as the wife's

trustee, and provision was made for her maintenance and the enjoyment of separate property, it was held, that the declarations and admissions of the wife in relation to the property, were admissible in evidence in favor of the husband, in an action against the trustees upon his covenant in the deed. Now it follows, that the declarations of the wife could not be evidence for the husband, unless the deed of separation was valid, at least so far as the property and maintenance were concerned. See also the case of *Shethar v. Gregory*, 2 Wend. 422.

The early decisions in chancery went as far as those in the courts of law. In *Nichols v. Danvers*, the defendant, having ill-treated his wife, gave her a note that if he should again ill-use her she should have her share of her mother's estate to her own use; and upon the happening of subsequent ill-treatment by the husband, the wife and her brother filed a bill against him for that purpose, and the lord keeper decreed the interest to her for life for her maintenance, and afterward to the husband for life, and the principal to the issue, if any; and if none, to the survivor of the husband and wife; and he remarked, that the words in the note, "in case he should again ill-use her," must have meant, "in case she should be obliged to live separately from him."

In some of the early cases, articles of *separation* were specifically enforced (Gilb. Eq. 152, 153); and in the case of *Guth v. Guth*, 3 Bro. 64, it was determined, after great consideration, that *articles of separation* may be specifically enforced at the suit of the wife, although the husband offered by his answer, to receive her again. The validity of a deed of separation, and for separate maintenance, was sustained in the case of *Moore v. Moore*, 1 Atk. 277, and it may be inferred from the judgment of Lord HARDWICK in that case, that he considered an agreement for separation in *prospective* to be good.

In *Cook v. Wiggins*, 10 Vesey, 191, it was said that there was no doubt of the general jurisdiction of a court of equity to decree a specific performance of articles

between husband and wife for separation and separate maintenance. 11 Vesey, 537; 19 id. 63.

In *Reade v. Livingston*, 3 Johns. Ch. 481, it was held, that a voluntary settlement, after marriage, upon the wife and children, was void as to creditors at the time of the settlement; but if the husband be not indebted at the time, such settlement is not void as against subsequent creditors; and Chancellor KENT says that this was the true doctrine of that case, deduced from the English authorities.

We know that the old decisions have in many points, been overruled by more modern cases, and that the court of chancery in England, and perhaps in some of the States, has of late years gone to the utmost stretch of power and authority, to limit and restrict the operations of deeds of separation and for separate maintenance. But no authority, ancient or modern, can be brought to set aside the deed in this case, at the suit of the husband. There is not a case to be found where the principles of this bill have been decreed in chancery, and none of the cases cited by the appellant go that length.

In *Carson v. Murray and others*, 3 Paige, 483, one of the cases relied upon, the chancellor sustained the validity of the deed, and the portion of his decision that has been read militates nothing against the deed in this case. He only says, that an agreement for a separation cannot be supported, unless the separation has previously taken place, or is immediately to happen; and that if the parties afterward cohabit or live together, the agreement will be rescinded.

In the case of *Worrall v. Jacob*, 3 Merivale, 256–268, one of the cases referred to by the appellant, Sir WILLIAM GRANT, master of the rolls, only decided, that chancery *would not carry into execution articles of agreement between husband and wife;* but he admitted that agreements between the husband and a third person as a trustee, though originating out of and relating to a separation, were valid, and might be enforced in equity. And

Lord ELDON, who always entertained and expressed the greatest repugnance to such deeds, said : that if the question was *res integra*, untouched by *dictum* or decision, he would not have permitted such a covenant to be the foundation of a suit in equity.   But *dicta* have followed *dicta*, and decision has followed decision, to the extent of settling the law on this point too firmly to be now disturbed.

The decisions of the English ecclesiastical courts are no authority in this country, nor are they binding on the courts of law and equity in England.   But if they were, what do the cases of *Westmeath v. Westmeath*, and *Mortimer v. Mortimer* amount to ?   Simply that in proceedings to restore marital rights, to force persons to live together, whatever may be the repugnance of one of the parties, a deed of separation is no bar in such case.

The deed in Lord Westmeath's Case provided for a future separation; and he filed his bill in chancery to have the deeds delivered up and canceled, and to enjoin the opposite party from proceeding at law upon them ; yet although Lord ELDON argued against the law throughout his decision, he admitted that it was so firmly settled that he had no authority to rescind the contract or to enjoin the parties from proceeding at law upon it.

The case of *Titley v. Durand*, decided in the Exchequer in 1819, only went thus far : that a contract for a *future separation of husband and wife is void*.   It did not touch the principles of this case.

The court will look at the *principles* that have been *decided* in the cases, and not take the *arguments* of the judges and chancellors as authority in deciding this case. Some of those arguments, if admitted as authority, are sufficient to overturn the whole system of the law upon this subject, as it has stood for more than two hundred years.

The principles to be deduced from all the authorities ; principles which perhaps, no court of law or equity would doubt anywhere as law at this day, are these:

1. That a contract between husband and wife, without the intervention of a trustee, is void.   2. That a contract with a trustee, providing for a future separation, is also void.   3. That a contract with a trustee, covenanting for the separate maintenance of the wife, where the separation has previously taken place, is valid both at law and in equity, and may be enforced even though the husband is willing that the wife should return to him again.   And 4. That subsequent cohabitation will rescind a valid deed made to a trustee.

Now, to apply these principles to the case under consideration.   The bill and the deed show that it is not a contract for *separation*, but a contract to secure a separate maintenance; that the separation had existed for years when the deed was executed; that the contract was made with a trustee mutually chosen, and the covenants are made to him.   No cohabitation has taken place since the execution of the deeds.   The separation is not a part of the contract, and is only referred to by way of recital, and there is no covenant in relation to it; and although it is the reason that led to the contract, it is not stated as the consideration.   The consideration expressed is the husband's liability to provide for the support of his wife.   The bill charges that the deeds were without any sufficient consideration, but this is not supported by the facts set up.   Beside his legal liability to support his wife in a suitable manner, an action at law was compromised by the deed, and the cause of action released.   The compromise of the suit is a good consideration for a promise, although there may have been no just cause of action.   The strictest tests may be applied, the strongest authorities may be brought in review, and these deeds will be found not to be in contravention of any decision that has been given.

IRVIN, J.   *Joseph Rolette* filed his bill in the district court of Crawford county, from which it appears, that the said *Joseph Rolette*, and *Jane Rolette* his wife, and

*Bernard W. Brisbois* as trustee, entered into an agreement for the separate maintenance of the said *Jane,* by which an annuity was settled upon her during her life, the payment of which was secured her by bond and mortgage. The object of the bill in this case is, to set aside and cancel that deed for a separate maintenance, as well as the bond and mortgage, for the reason that the said deed, bond and mortgage were made without any legal or adequate consideration ; "and with a view to accomplish an illegal object, which the said parties had no right to assume upon themselves to accomplish, and that the same is contrary to the laws of the land, and the salutary customs and usages of society, and ought to be set aside." To this bill a general demurrer was filed, which upon argument, was sustained by the district court, and from which decision an appeal was taken to this court.

When this deed which is made a part of the bill, is examined, it is found to be strictly such as is sanctioned and sustained by the authorities.

In support of the bill, the counsel relied on the case of *Rogers v. Rogers,* 4 Paige, 516, and the authorities therein cited ; *Westmeath v. Westmeath,* 4 Eng. Eccl. Rep. 228 ; *Mortimer* v. *Mortimer,* id. 543 ; *Carson v. Murray,* 3 Paige, 482 ; 11 Vesey, 536 ; 8 Term Rep. 545 ; 2 Story's Eq. 652, 4 ; 1 Chitty's Pr. 58.

In resistance of this bill, and in support of the demurrer, the counsel for the defendants relied on 4 Petersdorff's Abr. 85 ; *Cook v. Wiggins,* 10 Vesey, 191 ; *Rodney v. Chambers,* 2 East, 105 ; *Gawden v. Draper,* 2 Ventr. 217 ; *Moore v. Moore,* 1 Atkins, 272 ; *Lord Vane's Case,* 13 East, 171 ; *Fenner v. Lewis,* 10 Johns. 38 ; *Baker v. Barney,* 8 id. 483 ; *Carson v. Murray,* 3 Paige, 483 ; 2 Kent's Com. 161 ; and *Shethar v. Gregory,* 2 Wend. 422.

The deed herein set forth is not a deed for the separation of the plaintiff and his wife, and which as such, would have been obnoxious to many of the authorities cited by the counsel for the complainant, but is a deed

Rolette vs. Rolette et al.

for the separate maintenance of the wife, made and entered into many years after the separation had taken place. Such deeds being allowable, and when entered into sustained by the courts, we can see no objection, from any thing which arises out of the nature of this contract, to the decision of the district court.

If there be any thing in this particular case to be objected to in support of the bill, it must arise out of the deed itself, but which, as we have already said, upon examination, we find to be strictly such as is sanctioned and sustained by the authorities. We therefore think the decision of the district court right, and affirm the same with costs.