Baum vs. Baum.

BAUM, Respondent, vs. BAUM, imp., Appellant.

*January 9 — February 1, 1901.*

109      47
115     ²286
60 LRA   411
60 LRA   419
61 LRA   647

*Husband and wife: Agreement to separate and to assign insurance policy: Consideration; Public policy: Separate estate of wife.*

1. An agreement between husband and wife for voluntary separation is against the legislative policy of this state and is absolutely void.
2. An oral agreement by a husband to assign insurance policies to his wife, which has no consideration so far as the husband is con-

Baum vs. Baum.

cerned except a covenant on the part of the wife to separate and live apart, is without a valid consideration, and will not be enforced, even though it has been partially or imperfectly executed. Sec. 2347, Stats. 1898 (permitting a husband to assign a policy of insurance to his wife), has no application to the question.

3. Where the wife in such a case had no property, an action to enforce the agreement to assign the insurance policies is not an action regarding her separate estate.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

A demurrer to the complaint on the grounds that the plaintiff has no legal capacity to sue, and that it does not state facts sufficient to constitute a cause of action, was overruled. The complaint is quite lengthy, and contains very much irrelevant and redundant matter. Excluding the rubbish, the alleged cause of action may be briefly stated as follows:

Plaintiff and defendant are husband and wife, and have three children under age. For more than two years prior to September, 1897, defendant treated the plaintiff in a cruel and inhuman manner, and neglected to provide for his family, and plaintiff had determined to begin an action for divorce. About the 1st of September, 1897, the plaintiff and defendant agreed to live separate and apart, and the defendant thereupon agreed to contribute sufficient money to support his family, and to make an absolute and unconditional assignment to plaintiff of two policies of insurance on his life in the Northwestern Mutual Life Insurance Company, which policies were clear of all claims except a loan of $835 from the company to the defendant. Defendant also agreed to pay the premiums on said policies and keep them in force. Relying upon said agreements, plaintiff refrained from commencing an action for divorce. The policies of insurance were held by the company as security. About October, 1897, the plaintiff was informed by defendant and by an agent of the company that assignments had been executed. De-

Baum vs. Baum.

fendant failed to contribute money to support his family and pay the premiums on said policies. Plaintiff, fearing that defendant would not pay the interest on his loan, and, supposing that the assignment to her of said policies was absolute, in February, 1899, raised the money and paid the loan to the company, then amounting to $1,029.93. The policies and assignments were delivered to her, and then she learned that defendant had reserved the power to make choice of any tontine options granted under the conditions of said policies, and personally to receive the benefits therefrom, without the consent of the assignee; and, in case of the latter's death before said policies became due, the proceeds were to become payable to defendant's representatives or assigns. Upon receiving this information she notified the company of the interest she claimed in the policies under her agreement with her husband. Thereafter she demanded of the defendant that he carry out his said agreement and make an absolute and unconditional assignment of said policies, which he has refused to do. She paid premiums on said policies amounting to $78.90. She brings this action against her husband and the insurance company, and asks that said assignments be adjudged to be absolute and to vest the beneficial interest in said policies in her, and that the company be required to pay her all sums due or to become due to her. The defendant *Baum* has appealed.

For the appellant there were briefs by *Turner, Pease & Turner*, and oral argument by *J. H. Turner*. They argued, among other things, that voluntary agreements for separation between husband and wife are void except under certain conditions. *Evans v. Evans*, 93 Ky. 510; *Rogers v. Rogers*, 4 Paige, 516; *Morgan v. Patton*, 17 Hun, 403; *Goodwin v. Goodwin*, 4 Day, 343; *Pillow v. Wade*, 31 Ark. 678; *Van Order v. Van Order*, 8 Hun, 315; *Kelley v. Case*, 18 Hun, 472; *Wilson v. Wilson*, 1 H. L. Cas. 538, and cases cited; *Gilbert v. Gilbert*, 5 Misc. (N. Y.), 555, and cases cited; *Switzer*

*v. Switzer*, 26 Grat. 574, 578, and cases cited; *Collins v. Collins*, 93 Am. Dec. 606; *Beach v. Beach*, 2 Hill, 260, 263; *Buttlar v. Buttlar*, 57 N. J. Eq. 645; *Miller v. Miller*, 1 N. J. Eq. 391; *Aspinwall v. Aspinwall*, 49 N. J. Eq. 302; Beach, Mod. Law Cont. § 1544; *Whitney v. Whitney*, 15 Misc. (N. Y.), 72; *Hungerford v. Hungerford*, 16 App. Div. 614; *Poillon v. Poillon*, 29 Misc. 666; *Simpson v. Simpson*, 4 Dana, 140, 143; *Stokes v. Anderson*, 118 Ind. 533, 4 L. R. A. 313, 321; *Henderson v. Henderson*, 48 L. R. A. 766; *Friedman v. Bierman*, 43 Hun, 387; *Helms v. Franciscus*, 2 Bland, Ch. 544, 20 Am. Dec. 402; *Jenne v. Marble*, 37 Mich. 319; *Head v. Head*, 3 Atk. 547; *Worrall v. Jacob*, 3 Merivale, 268. Courts have universally held, under statutes similar to ours, that a contract for separation to be valid must be made through a trustee. *Whitney v. Whitney*, 15 Misc. (N. Y.), 72; *Simpson v. Simpson*, 4 Dana, 140; *Beach v. Beach*, 2 Hill, 260; *Cropsey v. McKinney*, 30 Barb. 47, 56; *Calkins v. Long*, 22 Barb. 97; *Houghton v. Milburn*, 54 Wis. 554; *Galusha v. Galusha*, 138 N. Y. 272; *Daniels v. Benedict*, 97 Fed. Rep. 367; *Hughes v. Cuming*, 36 App. Div. 302; *Fox v. Davis*, 113 Mass. 255; *Stephenson v. Osborne*, 41 Miss. 119; *Tallinger v. Mandeville*, 48 Hun, 152; *Wilson v. Wilson*, 1 H. L. Cas. 538; Schouler, Husband & Wife, § 483; Waterman, Specific Performance, § 42; *Switzer v. Switzer*, 26 Grat. 574; 2 Story, Eq. Jur. § 1428, and cases cited; *Rogers v. Rogers*, 4 Paige, 516; *Helms v. Franciscus*, 2 Bland, Ch. 544; *Poillon v. Poillon*, 29 Misc. (N. Y.), 666, and cases cited; *S. C.* 49 App. Div. 341.

For the respondent there was a brief by *Bloodgood, Kemper & Bloodgood*, and oral argument by *J. B. Kemper*.

BARDEEN, J. Counsel for the respondent have relieved us of any doubt as to the ultimate purpose of this action. In their brief they say, "This is an action to reform a contract already made so that it will express the true meaning and

intent of the parties, which, by mistake and inadvertence, it failed to do." The contract set out in the complaint is an oral one between wife and husband, to live separate and apart. The wife agrees to nothing beyond the mere fact of separation. As a part of said agreement, the husband agrees to contribute money for the support of his wife and children. This he was legally bound to do without any agreement. Another part of the husband's agreement was to make an absolute and unconditional assignment of certain insurance policies on his life. This, it appears, he has failed to do, and it is this part of the agreement which is sought to be enforced in this action. Although not distinctly so alleged, the plain inference is that the parties were then living together as man and wife. The question is fairly presented for the first time in this court whether, under the circumstances stated, an oral contract between husband and wife, without the intervention of a trustee, to separate and live apart, will be enforced.

An attempt is made to separate the agreement to assign the insurance policies from the other branches of the contract; the theory being that because sec. 2347, Stats. 1898, permits a husband to assign a policy of insurance to his wife, the imperfect execution of such assignment may be corrected and enforced in a suit by the wife. This statute, however, has no application to the question. We must go back to the original contract. On the one side, the wife's only agreement is to separate and live apart from her husband. In consideration thereof the husband agrees to contribute to her support and the support of their children, and to assign the insurance policies by an absolute assignment. He fails to carry out this agreement. Will it be enforced? In opposition to its enforcement it is said that it is without consideration and is void as against public policy.

No similar question has been decisively considered by this court. The nearest approach to it is the case of *Rolette v.*

Baum vs. Baum.

*Rolette*, 1 Pin. 370, which was an action brought by the husband against his wife and the trustee mutually chosen, to set aside the deed of separation and a bond and mortgage to secure it given by the husband to the trustee. The latter contained provisions requiring the husband to pay the wife an annuity quarterly. The husband claimed that the deed, bond, and mortgage were without any sufficient consideration, and were void as being contrary to the policy of the law in relation to marriage, and against the interest, order, and happiness of society. The complaint showed that the parties had been living apart for some time when the deed and other papers were executed. In discussing the situation the court used the following language: "The deed herein set forth is not a deed for the separation of the plaintiff and his wife, and which, as such, would have been obnoxious to many of the authorities cited by the counsel for the complainant, but is a deed for the separate maintenance of the wife, made and entered into many years after the separation had taken place." The ultimate conclusion was that deeds of this kind were allowable and would be sustained by the court. This decision simply goes to the extent of holding that after a separation has taken place the court will uphold a written agreement of separation and for the wife's support, when made through the intervention of a trustee.

When we come to consider the literature on this subject and review the multitude of cases in which it has been considered, we are struck at once with the lack of harmony of opinion, and with the diversity of decisions. This may be accounted for in a measure by the want of uniformity in the laws regulating the marriage status. In England the unwritten law did not permit the courts to dissolve a marriage or separate the parties on their consent or by confession of one of them. An act of Parliament carefully pointed out for what causes separations might judicially be permitted.

Baum vs. Baum.

Yet, by what Mr. Bishop terms as "one of the most marvel-ous judicial somersaults ever witnessed in any country," the English courts now permit the parties to mutually agree to a separation either identical with or differing from the judi-cial one, as they may prefer, proceeding on a cause which the law allows or forbids, or on no cause, and will enforce specific performance. 1 Bishop, Marriage, Div. & Sep. §§ 1263, 1264. The binding nature of this sort of bargains seems to have been placed upon the ground that the law gave the wife the power to bring, to defend, and to settle divorce·suits; and therefore she can make an agreement whereby such a suit is avoided. This seems to be in utter defiance of the law which has existed from the earliest times, forbidding the courts from upholding or sanctioning separa-tion, *in pais* or in court, except upon proof of grounds legally defined and declared sufficient. This change of law is justi-fied upon the ground that public opinion had changed as to the question of public policy involved, and which was by the judges considered a sufficient justification for them to change the law. *Besant v. Wood,* 12 Ch. Div. 605–620. In this country such a complete overturning of settled rules can never be justified, except in obedience to legislative enact-ment. Our ideas of "public policy" are such as may be gathered from the constitution and the laws and the course of administration and decision. When the will of the people has become crystallized into legislative enactment, and a given subject has been surrounded by regulations, limita-tions, and restrictions, the courts are bound to consider them as indicating a definite policy, and to yield obedience thereto. In the practical administration of justice the expressed will of the people overrides and controls the individual opin-ions of judges, and finds expression in decisions in harmony therewith. Any other course would be revolutionary and in opposition to the spirit of our form of government.

In the different states the laws regulating the marriage

status are so diverse that, before giving credit or weight to a judicial decision thereunder, it becomes quite essential to ascertain the legislative policy which finds expression in the laws enacted. Hence the citation of decisions from other states is of no helpful value unless it can be said that their legal policy is in harmony with our own. In England in former times, and in most of the states, as well as our own, the doctrine is recognized that there are always three parties to a marriage contract,— the husband, the wife, and the state. The reason is that the state has a special interest in each individual marriage, and permits its dissolution only in those circumstances and cases wherein it deems the public interest will not be thereby impaired. 1 Bishop, Marriage, Div. & Sep. § 72. By reason of this special interest, stringent laws have been enacted, prescribing the terms and conditions upon which a marriage may be contracted, and regulating with equal strictness the means and grounds of its dissolution. *Prima facie*, therefore, each particular marriage is beneficial to the public, each divorce prejudicial. From this arises the rule of law that agreements promotive of marriage are valid, and those in aid of separation and divorce are void. There can never be a divorce by agreement or consent of parties. Without dissent, the courts unite in condemning all applications for a dissolution of a marriage where there is a suggestion of collusion. In harmony with the idea that circumstances might arise during cohabitation rendering it unfit or impossible for the parties to continue together in the close relation of man and wife, the legislature has seen fit to mention certain grounds upon which a separation from bed and board may be adjudged. With the wisdom of this legislation we are not concerned. We must accept it as the will of the people, and administer it according to its spirit and letter. The fact that such legislation is to be found on our statute books is a strong reason for saying that it was the legislative purpose that only such separation shall be recog-

nized as has received judicial sanction. It being universally conceded that an absolute divorce will not be granted upon consent or agreement of the parties, there would seem to be equally as strong reason for holding that an agreement for separation, which is the equivalent of a limited divorce, should not be recognized. In other words, it is for the courts, and not the parties, to determine whether proper grounds for a separation exist or not. To uphold such agreements substitutes the will of the parties for the judgment of the judicial tribunal established by law to decide such questions. We need not turn to other states for precedents. The question turns upon the legal policy of this state, as evidenced by legislative enactments. An agreement for voluntary separation is distinctly against such policy, and for that reason must be held to be absolutely void.

The agreement in question was oral, and but partially executed. The usual form of such bargains is by a deed between the husband, the wife, and a third person acting as her trustee. 1 Bishop, Marriage, Div. & Sep. § 1286. We need not inquire whether under our statute the intervention of a trustee is necessary or not. Admitting, as has been in held in some jurisdictions (*Dutton v. Dutton*, 30 Ind. 452), that a parol agreement fully executed would be recognized in equity, still that rule does not apply here. This action is to enforce the specific performance of a portion of the original agreement,— an agreement having no consideration, so far as the husband is concerned, farther than a present covenant on the part of the wife to separate. Such an agreement, we must hold, is contrary to the legal policy of this state, and will not be enforced. It implied a direct renunciation of stipulated duties,— a dereliction of those mutual offices which the parties are not at liberty to desert by agreement between themselves. It substituted the will of the parties for the judgment of the court, and involved the assumption of a false character in both parties, contrary to

the marriage contract and subversive of the interests of society. The reason given by the chancellor in *Rogers v. Rogers*, 4 Paige, 516, meets our approval, when applied to the case before us. When an agreement has been made after separation in such a way that it may be enforced, as in the *Rolette Case*, 1 Pin. 370, the law tolerates it, but will not regard it with favor.

The assertion that this is a suit regarding the separate property of the wife cannot be recognized. It affirmatively appears in the complaint that she had no property, but was dependent upon her own exertions and the help of relatives. It is to make these insurance policies a part of her separate property that this suit is brought. To do so, she must revert to the original contract, which, as we have seen, has no binding force.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded with directions to sustain the demurrer, and for further proceedings according to law.