ALICIA C. CAREY *vs.* JONATHAN I. MACKEY.

York.   Opinion April 15, 1890.

*Bond.   Husband and wife.   Separate support.   Contract.   Validity.*
*Place of performance.   Divorce.*

No set form of words is necessary to make a penal bond, *e. g*:—"If I by deed, covenant or promise to do a thing, and then say, to perform which promise I bind myself in twenty pounds," this is a good obligation in law.

An agreement between husband and wife, for the separate support of the wife, is valid in this state, when there is good cause for the separation and the contract does not offend public policy.

Such a contract entered into by residents of another state, who are temporarily abiding here, is legally enforceable in this state, when it appears that, it having been delivered and partly performed here, it was their intention to be governed by our laws, and that no evasion of the laws of their residence was intended, and the contract is not criminal by the laws of that state.

While it is the general rule that contracts are to be interpreted according to the law where performance is to be had; *Held,* that this rule is more applicable to commercial contracts than to agreements of this kind,—the question pertaining rather to its validity than to the meaning of its provisions.

A decree of divorce, of its own force, does not terminate a prior agreement for separate support, when the decree is silent upon the matter.

All contracts of this kind, which equity would uphold before divorce, the law recognizes after divorce.

ON REPORT.

This was an action of debt on the bond of the defendant, made and given to the plaintiff, then his wife, September 12, 1882, for her separate support. Besides a general count in the declaration for the penal sum of the bond, the plaintiff also declared for forty-five monthly payments of thirty dollars each.

April 13, 1883, a divorce *"a vinculo"* with a decree for a gross sum $690.00, as alimony, and the right to resume her maiden name, was granted to the plaintiff, by the court in Florida, where both parties had their domicil.

The case was considered by the law court, on stipulation of the parties, with jury powers; and were to enter such judgment as the law and the facts warranted, upon the legally admissible evidence.

*G. C. Yeaton, H. H. Burbank,* with him, for plaintiff.

Wife may contract with her husband, and maintain an action upon it after divorce. *Webster* v. *Webster,* 58 Maine, 139; *Guptill* v. *Horne,* 63 Id. 405; *Carlton* v. *Carlton,* 72 Id. 115; *Lane* v. *Lane,* 76 Id. 521.

Validity of bond: *Van Valkenburgh* v. *Smith,* 60 Maine, 97. Divorce proceedings judicially establishes a "legally sufficient cause" for separation and divorce existed at date of bond. Laws

of Florida, c. 93. Such bonds (payable to trustee) good at common law. May now be payable to wife. R. S., c. 61, § 1. *Blake* v. *Blake*, 64 Maine, 177 ; *Clark* v. *Ins. Co.*, 81 Maine, 373. Russell & Russell's Macqueen's H. & W., 3d ed. (1885) c. 13, § 1, p. 337, and citations ; Peachey's Settlements, c. 20 ; *Vansittart* v. *Vansittart*, 2 DeG. & J. 249, and citations ; Kelly's Cont. Mar. Women, c. 6, § 9 ; 1 Bish. Mar. & Div. Book 5, c. 32 ; Id., Law Mar. Women, § 760 ; Schouler's H. & W. part 9, c. 1 ; Reeve's Dom. Rel. (Eaton's 4th ed.) 131 ; Stewart's H. & W. § 105 ; Cord's L. & E. Rights of Mar. Women, (2d ed.) 114-152 ; Endlich & Richard's Rights and Liabilities of Mar. Women in Penn. 219-221, 266, n. 3, and citations ; *Mann* v. *Hurlburt*, 38 Hun. 27-30 ; *Carpenter* v. *Osborne*, 102 N. Y. 552 and citations ; *Page* v. *Trufant*, 2 Mass. 159 ; *Ayer* v. *Ayer*, 16 Pick. 327, 332, 335 ; *Hollenbeck* v. *Pixley*, 3 Gray, 521 ; *Albee* v. *Wyman*, 10 Gray, 222 ; *Holbrook* v. *Comstock*, 16 Gray, 109 ; *Comstock, Admr.* v. *Holbrook*, U. S. C. Court (R. I.) not reported ; *Fox* v. *Davis*, 113 Mass. 255 ; *Alley* v. *Winn*, 134 Mass. 77 ; *Merrill* v. *Peaslee*, 146 Mass. 460 ; *Miller* v. *Miller*, 64 Maine, 484, approving *Carson* v. *Murray*, 3 Paige, 483.

Validity and construction of agreement governed by the law of Maine : *Stickney* v. *Jordan*, 58 Maine, 106 ; *Milliken* v. *Pratt*, 125 Mass. 374 ; *Tennant* v. *Tennant*, 110 Pa. St. 478 ; *Ryan* v. *R. R.*, 65 Tex. 13 ; *Jackson* v. *Green*, 112 Ind. 341 ; *Gibson* v. *Serblett*, 82 Ken. 596 ; *The Brantford City*, 29 Fed. Rep. 373, 394-396 ; *Blackwell* v. *Webster*, 30 Fed. Rep. 614 ; Story's Confl. Laws, § 102 ; Whar. Confl. Laws, § 504, n ; *Phinney* v. *Phinney*, 81 Maine, 450, 460.

Damages : *Holbrook* v. *Tobey*, 66 Maine, 410 ; *Maxwell* v. *Allen*, 78 Maine, 32 ; *Chase* v. *Allen*, 13 Gray, 42 ; *Lynde* v. *Thompson*, 2 Allen, 456 ; Suth. Dam. § 6.

*R. P. Tapley, H. Fairfield*, with him, for defendant.

Counsel cited upon the question of consideration : *Fuller* v. *Lumbert*, 78 Maine, 325 ; Bigelow, Estop. pp. 301-303. Where made and to be performed : Story Confl. Laws, §§ 280, n. 299, 301, 304 ; Whar. Confl. Laws, § 401 ; Pars. Notes & Bills, 324 ; *Milliken* v. *Pratt*, 125 Mass. 374 ; *Lawrence* v. *Bassett*, 5 Allen,

140; *Bell* v. *Packard*, 69 Maine, 105; *Bank* v. *Wood*, 142 Mass. 563; *Hill* v. *Chase*, 143 Mass. 129. Validity and obligation: Story Confl. Laws, §§ 242, 296-301, b.; 304, 305; 2 Kent's Com. p. 574; Whar. Confl. Laws, §§ 401, 498, 504; *Akers* v. *Demond*, 103 Mass. 318, (common law) *Martin* v. *Martin*, 1 Greenl. 394; *Johnson* v. *Stillings*, 35 Maine, 427; *Allen* v. *Hooper*, 50 Maine, 371; laws of Florida, c. 138, § 7; *Pritchard* v. *Norton*, 106 U. S. p. 136; *Kennedy* v. *Cochrane*, 65 Maine, 594.

· Capacity to make the contract: *Hobbs* v. *Hobbs*, 70 Maine, 381; *Libby* v. *Berry*, 74 Id. 286. There is no law of this state or Florida authorizing a husband to make such a contract with his wife, and be bound in law.

Damages: *Fisk* v. *Gray*, 11 Allen, 132; *Dwinel* v. *Brown*, 54 Maine, 468.

PETERS, C. J. The plaintiff declares on the instrument adduced below, as a penal bond, and also upon the covenants expressed in it:—"This agreement made this twelfth day of September 1882, between Jonathan I. Mackey and Alicia C. Mackey, both of Florida and residents of Jacksonville in said Florida, witnesseth that, whereas my wife, Alicia C. Mackey, has this day expressed her desire to me that a separation of relations of man and wife between ourselves might be effected, and for good reasons known to herself, be it known that I hereby consent to said separation, and, in consideration of my duty to her as her husband, I hereby agree to pay to her monthly, through the Hon. M. A. McLain of Jacksonville aforesaid, the sum of thirty dollars per month, on the first day of each month, the first installment or payment being and to become due November 1, 1882. And I hereby bind myself to the well and true payment of thirty dollars aforesaid monthly, so long as she shall maintain good behavior and shall (not) have remarried, and this I bind myself to do under a penalty of five thousand dollars, to be recovered by her in any court of law by attachment upon my property and of myself, which sum of five thousand dollars aforesaid I hereby agree shall be considered a forfeiture upon my part to her. And this thirty dollars per month is in addition to the one hundred and fifty dol-

lars which I have already paid her at the making of this agreement. And this I do freely and understandingly.

Witness my hand and seal this 12th September, 1882.

J. I. MACKEY, (seal)."

The instrument was acknowledged before H. M. Sylvester, a notary public, and witnessed by him.

The plaintiff cannot recover on both forms of declaration.

She elects to recover the penal sum. We have no doubt the instrument declared on is a penal bond. It contains all the elements of one, though perhaps not expertly put together.

"If I by deed, covenant or promise to do a thing, and then say, to perform which promise I bind myself in twenty pounds, this is a good obligation in law." No set form of words is necessary, as see numerous illustrations in Bacon's and Dane's Abridgments; Title, Obligation. We are of opinion that the five thousand dollars are a penalty and not liquidated damages.

Passing the points made on the pleadings, an important question arises whether an agreement for separate support is valid in this state. We do not see why not. It is said in argument that there has never been a judicial decision in the state touching the question. That indicates that the danger of a frequency of such cases must be small indeed.

Certainly such an agreement comes within the spirit of our late statute which provided for a divorce from bed and board, the marital tie remaining. There never has been any judicial expression in this state against an agreement for separate support. The doctrine is upheld in an early Massachusetts case when this state was a part of that commonwealth, and the precedent is, therefore, as binding here as it is there.

In *Page* v. *Trufant*, 2 Mass. 159, decided in 1806, it was held that "a bond from the husband to the father of the wife for her maintenance, after a voluntary separation, is a valid contract." According to the practice of that day, each judge sitting expressed his opinion on the question, and all favored the doctrine. Parsons, C. J., closed the discussion in these words: "It in fact appears on the record that the consideration was legal and meritorious, as it was made to secure a separate maintenance for the

wife, who separated from her husband for their mutual comfort, to avoid the effect of jealousies and animosities that existed between them."

In *Fox* v. *Davis*, 113 Mass. 255, the doctrine is fully recognized, and was applied in that case. Mr. Bishop, in 1 Bish. Mar. & Div. (6th ed.) book 5, c. 39, enumerates the states, citing their cases, where the doctrine is either allowed or disallowed; and it appears to have been accepted by most of the states. In England it is established by act of Parliament. The condition on which it rests is that separation has already taken place, or that the agreement is made in contemplation of an immediate separation which takes place as contemplated.

The only objection to such contracts is the encouragement which may be afforded for married parties to separate from each other. We think that amounts to little or nothing under our liberal divorce system. Parties greatly prefer divorce and alimony to mere separation.

There may be a distinction to be observed. Some contracts of separation might offend public policy, and others not. Certainly there are cases where a wife would be justified in separating from her husband, and asking a support from him notwithstanding the separation. There was undoubtedly good cause for separation in the present case. The evidence in the divorce case, to be alluded to hereinafter, which is a part of the 'record of this case, shows that the separation was caused by cruelties inflicted by him upon her. He had frequently choked her severely, and habitually abused her in different ways. She proves that she has been a person of good behavior since separation, as the contract requires of her, and that she has not married again.

It is contended, however, by the defendant that the contract is to be interpreted, not by the law of Maine, but by the law of Florida where by its terms it was to be performed, and that such a contract is invalid by the law of the latter state.

While it may be admitted that the general rule is, that contracts are to be interpreted according to the law of the place where performance is to be had, there are some exceptions when the question pertains to the validity of the contract rather than

to the meaning of its provisions. We are satisfied that the general rule invoked by the defendant's counsel, does not govern the case before us. That rule is more applicable to commercial contracts than to agreements like this.

Professor Wharton lays down, and supports with authorities, this proposition: "That parties who enter into a contract are presumed to do so *bona fide*, intending the contract to be performed; and that they are supposed, if two systems of law are before them, by one of which the contract would be good, by the other of which it would be bad, to incorporate in the contract the law which would make the contract operative." Whar. Ev., 2d ed. § 1250. The same author states the same proposition again, (Whar. Confl. Laws, 2d ed. § 429), in these words: "It is always to be presumed that persons agree effectually to do that which they contract, and if so, this agreement becomes a part of the contract, overriding such local law as does not rest on a ground distinctively moral or political. And when there is a conflict of possible applicatory laws, the parties are presumed to have made part of their agreement that law which is most favorable to its performance."

Professor Parsons (Par. Con. 6th ed., 2 vol. 583), accepts and strongly advocates this view. There are also late cases supporting it. In *Hart* v. *Jones*, 12 R. I. 265, it is held, that, when a vender sold goods in Rhode Island to be delivered in New York, and the contract was valid in Rhode Island, and void in New York on account of the statute of frauds in that state, the sale should be regarded as a Rhode Island contract. A note made in Connecticut on Sunday after sunset, was held to be valid, though had it been made in the same circumstances in Rhode Island it would have been invalid. *Brown* v. *Browning*, 15 R. I. 422; *Blackwell* v. *Webster*, 23 Blatch. 537; and *Scudder* v. *Union Nat. Bank*, 91 U. S. 406, bear with weight on this question.

There are strong circumstances, features in the contract and facts about it, which strengthen the presumption that the parties intended to be governed by the laws of Maine in their contract. The paper was made here (at Portland), and delivered here. It was partly performed here, one hundred and fifty dollars having

been paid at its delivery. The cause producing the agreement occurred in Maine, being principally his treatment of her while temporarily residing at Old Orchard. The separation took place in Maine, and there was nothing preventing her thereafterwards residing in Maine, or out of Florida.

The parties were not at the time merely travelling through the state, but were temporarily abiding here. No evasion of the law of Florida was intended, nor is the contract a criminal one under her laws. It is merely contended that that state has adopted a part of the old common law which disapproves such agreements upon grounds of public policy.

That state has no statute on the subject, and no case touching it has ever been in any form before any of its courts.

We think the contract is legally enforceable in this state.

It is contended for the defendant that the agreement for separate support was terminated by the divorce obtained by the plaintiff in a court in Florida in 1883. The agreement does not provide for its rescission or termination upon the wife's divorce. A failure of good behavior or remarriage are the only causes provided for its termination. The promised support would be just as much needed after divorce as before. There is no agreement of parties in the provisions of the divorce, nor was there any in the negotiations preceding divorce, that the contract should be annulled thereby, although the defendant attempted to prove such an understanding. The court could have imposed such condition, a not uncommon thing, but failed to do so. Nor does the decree of divorce, of its own force, have the effect of terminating the prior agreement for separate support. On this point the doctrine is stated by Mr. Bishop, and the authorities fully cited. 1 Mar. & Div. 6th ed. § 637; 2 same, §§ 55, 717-722, 741.

The counsel for the defendant argue at great length that an action cannot be maintained on the agreement because not of legal form in all respects, very properly contending that all contracts made between husband and wife do not become valid merely because the marital tie has been sundered by a decree of divorce. But all contracts of the kind which equity would uphold before divorce, the law recognizes after divorce.

This agreement is substantially a legal agreement, and at all events a good equitable agreement. Had the promise in it been made to the plaintiff's agent as her trustee, it would have been a perfectly formal instrument at law. But the promise is to her, though the delivery of the money was to be to the agent for her. Equity would have readily supplied formality.

In the divorce proceedings the plaintiff received allowances towards her support of $690.00, the terms of divorce having been arranged by the counsel of the parties. Here then was a decree of court for support, and also an agreement of parties for the same purpose. It does not clearly appear what was in the minds of the parties about a double allowance, but from what was said and done in the negotiation, and because there would be much apparent justice in thus interpreting the transaction, we think we are justified in concluding that it was the tacit understanding of the parties that the allowances, in the divorce suit, should be a credit to that extent upon the amounts payable by the contract. *Albee* v. *Wyman*, 10 Gray, 222.

The result must be that judgment is to be entered for the penal sum of the bond, execution to issue for the sum due on the bond, less the credit of six hundred and ninety dollars.

*Defendant defaulted for the penal sum.*
*Damages to be assessed at nisi prius.*

WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.