NICHOLS & SHEPARD COMPANY, Appellant, v. LAVINA G. MARSHALL.

**Contracts: ENFORCEMENT:** *Law of sister state.* A contract of suretyship by a married woman domiciled in Iowa, made while temporarily in Indiana, cannot be enforced in Iowa, since, under the laws of Indiana (Burns' revised statute, section 6964) such a contract is void, and a contract void where executed cannot be enforced by the courts of Iowa.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

MONDAY, MAY 22, 1899.

ACTION at law upon a promissory note signed by defendant as surety for Milton W. Gregory. The trial court sustained a demurrer to plaintiff's petition, and plaintiff appeals. —*Affirmed.*

*Berryhill & Henry* and *L. Ward Bannister* for appellant.

*C. C. & C. L. Nourse* for appellee.

DEEMER, J.—Defendant is a married woman domiciled in this state. On or about the ninth day of July, 1894, she signed the note in suit, in the state of Indiana, at which place she was temporarily visiting, as surety for Milton W. Gregory. The note was made payable at the Indiana National Bank of Indianapolis. The laws of Indiana (section 6964, Burns' Rev. St.) provide that "a married woman shall not enter into any contract of suretyship, whether as indorser, guarantor, or in any other manner; and such contract, as to her, shall be void." It is insisted on behalf of appellant that as defendant was domiciled in this state at the time she made the note, her capacity to contract followed her into the state of Indiana, and validated her contract made in that commonwealth, and that the right of a married woman to make a contract relates to her contractual capacity, and, when given by the law of the domicile, follows the person. Our statutes permit the making of contracts of suretyship by married women, and, if appellant's postulate be correct, it follows that plaintiff is entitled to recover. The general rule seems to be, however, that the validity, nature, obligation, and interpretation of contracts are to be governed by the *lex loci contractus aut actus. Savary v. Savary,* 3 Iowa, 272; *Boyd v. Ellis,* 11 Iowa, 97; *Arnold v. Potter,* 22 Iowa 194; *McDaniel*

*v. Railway Co.,* 24 Iowa, 417; *Burrows v. Stryker,* 47 Iowa, 477; *Bigelow v. Burnham,* 90 Iowa, 300. The rule is also well settled that personal status is to be determined by the *lex domicilii. Ross. v. Ross,* 129 Mass. 243. Continental jurists have generally maintained that personal laws of the domicile, affecting the status and capacity of all inhabitants of a particular class, bind them, wherever they may go, and that the validity of all contracts, in so far as the capacity of the parties to contract is involved, depends upon the *lex domicilii.* Thus, the Code of Napoleon enacts, "The laws concerning the status and capacity of persons govern Frenchmen, even when residing in a foreign country." See, also, Story Conflict of Laws (8th ed.), sections 63-66; Wharton Conflict of Laws (2d ed.), section 114. Some of the English cases have also followed this rule. *Guepratte v. Young,* 4 De Gex & S. 217, 5 Eng. Ruling Cas. 848; *Sottomayor v. De Barros,* 47 Law J. Prob. 23, 5 Eng. Ruling Cas. 814. But see, apparently to the contrary, *Burrows v. Jemino,* 2 Strange, 733; *Heriz v. De Casa Riera,* 10 Law J. Ch. 47. We do not think the continental rule is applicable to our situation and condition. A state has the undoubted right to define the capacity or incapacity of its inhabitants, be they residents or temporary visitors; and in this country, where travel is so common, and business has so little regard for state lines, it is more just, as well as more convenient, to have regard to the laws of the place of contract, as a uniform rule operating on all contracts, and which the contracting parties may be presumed to have had in contemplation when making their contracts, than to require them, at their peril, to know the domicile of those with whom they deal, and to ascertain the law of that domicile, however remote, which in many cases could not be done without such delay as would greatly cripple the power of contracting abroad at all. Indeed, it is a rule of almost universal application that the law of the state where the contract is made and where it is to be performed enters into, and becomes a part of that contract, to the same

extent and with the same effect as if written into the contract
at length.   Each state must prescribe for itself who of its
residents have capacity to contract, and what changes shall be
made, if any, in the disabilities imposd by the common law.
Thus, in *Thompson v. Ketchum,* 8 Johns. 192, the note was
made in Jamaica.   The defense was infancy, according to
the laws of New York.   It was determined that the transac-
tion was subject to the laws of the place of contract, and that
infancy was a defense, or not, according to the laws of
Jamaica.   Mr. Justice Story, in his commentaries on Conflict
of Laws, says:   "In regard to questions of minority or
majority, competency or incompetency to marry, incapacities
incident to coverture, guardianship, emancipation, and other
personal qualities and disabilities, the law of the domicile of
birth, or the law of any other acquired and fixed domicile, is
not generally to govern, but the *lex loci contractus aut actus,*
where the contract is made or the act done."   Story, Conflict
of Laws, sections 103, 241.   See, also, 2 Kent Commen-
taries, 233, note; 2 Kent Commentaries, 458; 2 Kent Com-
mentaries, 459, note.   It will be observed that Chancellor
Kent, in some passages of his text, seems to incline to the
civilian doctrine, yet the notes clearly indicate that he con-
curs with Justice Story.   See further, on this subject, Story
Conflict of Laws (4th ed), sections 101, 102.   The case of
*Pearl v. Hansborough,* 9 Humph. 426, is almost exactly in
point.   In that case a married woman, domiciled with her
husband in the state of Mississippi, by the law of which a pur-
chase by a married woman was valid, and the property pur-
chased went to her separate use, bought personal property in
Tennessee, by the law of which married women were inca-
pable of contracting.   The contract was held void and unen-
forceable in Tennessee.   See, also, *Male v. Roberts,* 3 Esp.
163; *Milliken v. Pratt,* 125 Mass. 374; *Carey v. Mackey,* 82
Me. 516, 17 Am. St. 500 (20 Atl. Rep. 84); *Baum
v. Birchall,* 150 Pa. St. 164 (24 Atl. Rep. 620); 2
Parsons   Contracts   (8th ed.),   *574,   note;   2   Parsons

Contracts, *575-*578.    *Saul v. Creditors,* 5 Mart. (N. S.) 569, seems to be opposed to this rule. But as the case is from Louisiana, which state follows the civil law, it is not an authority. We may safely affirm, with Chancellor Kent, that while the continental jurists generally adopt the law of domicile, supposing it to come in conflict with the law of the place of contract, the English common law adopts the *lex loci contractus.* Lord Eldon, in *Male v. Roberts, supra,* said: "It appears from the evidence in this case that the cause of action arose in Scotland, and the contract must be therefore governed by the laws of that country, where the contract arises. Would infancy be a good defense by the laws of Scotland, had the action been commenced there? What the law of Scotland is with respect to the right of recovering against an infant for necessaries, I cannot say; but, if the law of Scotland is that such a contract as the present could not be enforced against an infant, that should have been given in evidence, and I hold myself not warranted in saying that such a contract is void by the law of Scotland because it is void by the law of England. The law of the country where the contract arose must govern the contract, and what that law is should be given in evidence to me as a fact. No such evidence has been given, and I cannot take the fact of what that law is without evidence." It would seem, in this case, though not distinctly stated, that both parties were domiciled in England. The result of the application of these rules is that the contract was void where executed, and will not be enforced by the courts of this state.—Affirmed.