Action for divorce from bed and board. In the complaint the plaintiff by proper averment alleged cruelties and ill-treatment, entitling her to divorce a mesna, etc.; alleged further, ownership of an amount, real and personal, of property by defendant, and that he was an able-bodied man, capable of earning good wages, etc. Defendant answered, denying all allegations of cruelty and set up counterclaim for divorce by reason of wrongful abandonment by plaintiff, and denied the ownership of any real property whatever, alleging that it had all been disposed of and the proceeds expended in support of plaintiff and the payment of costs and charges imposed upon him at the instance and by the wrong of plaintiff; that his personal property was of insignificant amount and that he was a man sixty years of age, who could only do ordinary manual labor and was incapable of earning any such amount as claimed in the complaint. The answer further set up a deed of separation entered into by plaintiff and defendant of date 14 October, 1909; averred full compliance therewith on part of defendant and relied upon the terms of same in bar of the action and in bar of any other or further allowance to plaintiff by reason of the marital relations between the parties. This contract and agreement was in terms as follows:
NORTH CAROLINA — COLUMBUS COUNTY.
These articles of agreement entered into between W. J. Archbell of Beaufort County and Jessie Archbell of Columbus County, this 14 October, 1909, witnesseth: That whereas the said W. J. Archbell (411) and Jessie Archbell were lawfully married in North Carolina four years ago, and for the past year have been unable to agreeably live together as man and wife; and whereas it is mutually agreeable *Page 345 
that they shall each live separate and apart from the other; now, therefore, for and in consideration of the sum of $100 to the said Jessie Archbell in hand paid, the receipt of which is hereby acknowledged, the said W. J. Archbell and Jessie Archbell do mutually agree to live separate and apart from one another, and in consideration of the sum of $100 to her, the said Jessie Archbell, paid by the said W. J. Archbell, the said Jessie Archbell agrees, and by these presents does agree, to release and relinquish all right of support, all dower right, and all other personal and property rights which she might have acquired against the person or property of the said W. J. Archbell by virtue of the aforesaid marriage, and does hereby receive and accept the aforesaid $100 in full payment and satisfaction of all and of every right that she may hold against the person and estate of the said W. J. Archbell in consequence of the aforesaid marriage, and she does further agree to abandon and relinquish and release the said W. J. Archbell of all and every right of suit that she might have against him by reason of an act of abandonment that he might have committed in the past, and further agrees to release him of any claim she might have against him by reason of the aforesaid marriage. And the said W. J. Archbell agrees to release the said Jessie Archbell of all and every right of curtesy and all rights that he acquired in any property that she might have or might in the future possess and all personal rights that he might have acquired against her by virtue of the aforesaid marriage. And it is mutually agreed that they shall each live separate and apart from the other, independently of the other to the same extent as if they had never been married, and each shall in the future contract and be contracted with independently of the other to the full extent as if they had never been married.
In testimony whereof the said W. J. Archbell and Jessie Archbell have hereunto set their hands and seals this 14 October, 1909.
JESSIE ARCHBELL (SEAL).
W. J. ARCHBELL (SEAL).
And same was acknowledged before a justice of the peace in (412) ordinary form of privy examination; probate adjudged correct by Superior Court Clerk, Beaufort County, and duly registered in said county on 28 October, 1909. On issues submitted the jury rendered the following verdict:
1. Were plaintiff and defendant married, as alleged? Answer: Yes.
2. Has plaintiff been a resident of the State two years before filing the complaint? Answer: Yes.
3. Did defendant in 1908 and up to February, 1909, fail and refuse *Page 346 
to furnish plaintiff and her child proper and sufficient food, clothing, and other provisions, as alleged? Answer: Yes.
4. Did defendant on and shortly after February, 1909, assault the plaintiff with strops and other instruments, as alleged? Answer: Yes.
5. Did the defendant in the year 1906 strike plaintiff with his hand, as alleged by her? Answer: Yes.
6. Did defendant assault and beat plaintiff prior to May, 1906, as alleged? Answer: Yes.
7. Did defendant shortly after February, 1909, assault plaintiff on or near the bridge with her child and whip her, as alleged: Answer: Yes.
8. Did defendant wrongfully take plaintiff's infant from her and carry it out of the State, as alleged? Answer: Yes.
9. Did defendant offer such indignities to the person of plaintiff as to render her condition intolerable and life burdensome? Answer: Yes.
10. Did the defendant by cruel and barbarous treatment endanger the life of plaintiff? Answer: Yes.
11. Has the defendant been a resident of North Carolina two years preceding the filing of his answer, as alleged? Answer: Yes.
12. Did the plaintiff abandon the defendant as alleged? Answer: No.
13. Was the deed of separation procured through fraud and undue influence? Answer: No.
On the verdict defendant through his counsel tendered judgment for divorce a mensa and denying order for alimony by reason of the (413) contract, etc., above set forth. The court being of opinion that the deed of separation was void as a matter of law, entered judgment for divorce and awarding alimony, $15 per month for support of plaintiff and $75 to be paid into court as fees for Ward Grimes in conducting present suit, and defendant excepted and appealed.
After stating the case: In Collins v. Collins, 62 N.C. 153, the Court made definite decision "that articles of separation between husband and wife, whether entered into before or after separation, were against law and public policy and therefore void." Since that decision was rendered in 1867, our statutes upon "Marriage and Marriage Settlements and Contracts of Married Women" as entitled in The Code of 1883 and contained with amendments in Revisal 1905, ch. 51, have made such distinct recognition of deeds of this character, more especially in *Page 347 
Revisal, secs. 2116, 2108, 2107, etc., that we are constrained to hold that public policy with us is no longer peremptory on this question, and that under certain conditions these deeds are not void as a matter of law. This change in our public policy, which has been not inaptly termed and held synonymous with the "manifested will of the State,"Jacoway v. Benton, 25 Arkansas, 634, has been already recognized in several of our decisions, as in Ellett v. Ellett, 157 N.C. 161; Smithv. King, 107 N.C. 273; Sparks v. Sparks, 94 N.C. 527. And while there are some differences in the matter of form and in the conditions requisite to their validity and their effect when executed, the general proposition as to the validity of these deeds, in so far certainly as they concern property rights, is in accord with that long established in England, Hill v. Hill, 1 H. L. Cases, 1847 and 48, 553, and notes toStapleton v. Stapleton, 2 White and Tudor's Leading Cases in Equity, II, 1675, 1697, 1698, and which has generally prevailed with the courts in this country, Walker v. Walker, 76 U.S. 743; Commonwealthv. Thomas Richards, 131 Pa. St., 209; Cary v. Mackey, 82 Me. 516;Aspinwall v. Aspinwall, 49 N.J. Eq., all of them, so far as examined, except in New Hampshire. Hill v. Hill, 74 N. H., 288; Foote v.Nickerson, 70 N. H., 496. (414)
While our statute, as stated, recognizes these deeds as valid, it makes no definite regulation as to their contents or their effect when made, except in 2116, which provides in general terms that when a woman is living separate from a husband, either under a judgment of divorce or a deed of separation executed by the husband and wife and registered in the county where she resides, she shall be deemed and held a free trader with power to dispose of her personal and real estate without her husband's assent and the question being to a great extent without authoritative decision in this State, we must recur for guidance to the general principles applicable and to well-considered precedents elsewhere as to the nature of these instruments and the conditions and circumstances under which they may be properly upheld. From a consideration, then, of the authorities, we take it as established that articles or deeds of separation are permissible where the separation has already taken place or immediately follows; but that agreements looking to a future separation of husband and wife will not be sustained, and from the apparent weight of opinion it seems in making such agreements, under the circumstances indicated, the parties must be moved to it by adequate reasons, and not from mere "mutual volition or caprice" under circumstances of such character as to "render it reasonably necessary to the health or happiness of the one or the other," a position well stated in a case from Montana as follows: "An agreement between husband *Page 348 
and wife providing for a separation, an adjustment of their respective interests in property and for the future support and maintenance of the wife, is valid only when it is to take effect at once and is immediately complied with, and when the marital relations are of such a character as to render a separation necessary for the health or happiness of one or the other. Mere willingness to live apart is not enough, neither will the agreement be enforced when it is the result of mutual caprice or reckless disregard of marital obligations; neither will such an agreement be enforced when it is to be used as a means to facilitate a divorce." "Held, accordingly, a demurrer to the complaint was properly (415) sustained, where the complaint alleges the agreement to live apart, the mutual obligations thereunder, and the breach of the contract by the husband, but neither the agreement nor the complaint contains any statement of facts showing the necessity or cause for such separation." 19 Montana, 115. This case and the principle it sustains is referred to with approval in a full and learned note to Baum v. Baum,109 Wis. 47, S. c., 83 American St., 854-866. The note in question, however, refers to an opinion by Sanborn, J., in Daniels v. Benedict, 97 Fed., 367 and 369, as a "well-considered case," and in which a contrary view is taken, the case holding, among other things, that the relations existing between husband and wife as justifying a deed of this kind must be left to the determination of the parties interested, and that the "courts cannot inquire into the sufficiency of the reasons as affecting the validity of the agreement."
It may be that our statutes, 2107, 2108, hereinafter more particularly referred to, resolve this question in favor of the Federal decision, and the difference appearing in these cases is not perhaps of the first importance, as it will be a very rare occurrence when a deed of the kind is made without adequate reason moving the parties — a condition assuredly present in the case before us.
It is further established that if the parties resume the conjugal relations the agreement will be rescinded. This has been directly held with us in Smith v. King, 107 N.C. 273, and is in accord with the weight of authority. Zerminer v. Settle, 124 N.Y. 37; Tiffany on Domestic Relations, 168. Again it is held, "That such an agreement must be reasonable, just and fair to the wife, having due regard to the conditions and circumstances of the parties at the time when made." Garver v. Miller, 16 Ohio State, 528; Hutton v. Hutton, 3 Pa. St., 100.
The authorities also hold that these agreements, even when valid, do not affect the right of the parties to sue for a divorce for causes occurring either before or after they are entered. Bailey v. Bailey, 127 N.C. 474; notes to Baum v. Baum, 83 Am. St., 873. And while the American *Page 349 
courts hold that deeds of separation are so far imperfect obligations that they will not be specifically enforced in that feature which contemplates or provides for the separation of the parties (Aspinwall (416)v. Aspinwall, 49 N.J. Eq., supra,) when a suit for divorce is entered and the same is obtained, the agreement, if otherwise valid and in so far as it affects the property rights involved, should be respected by the decree. Galusha v. Galusha, 116 N.Y. 635. On the record, therefore, we could not, as formerly, declare the deed void in law as against the present public policy of the State, and if the matter were presented only in that aspect, we would feel constrained to uphold the deed, or in any event remand the case for a fuller finding as to whether the instrument in question was a fair and just arrangement. We are of opinion, however, that the judgment of the lower court should be sustained for the reason on which his Honor, no doubt, acted, that the deed in question is not executed in the form and manner required by our law to make it a binding agreement. On the matter of form, a large number of the States upholding these deeds have heretofore maintained that the interposition of a trustee was necessary, as in Stevensonv. Stevenson, 41 Miss. 119. This was based partly on the principle of the absolute identity of person in the case of husband and wife, which prevented their making contracts directly between them, a principle approved and acted on in the English courts and which prevailed to a great extent in North Carolina prior to the Constitution of 1868.Barbee v. Armstead, 32 N.C. 530. A number of courts, however, have always maintained a contrary view, as in Jones v. Clifton, 101 U.S. 225;Randall v. Randall, 37 Mich. 573; Commonwealth v. Richards, 131 Pa., supra, etc.; and in this respect also a change has been wrought in our law and public policy, not only as manifested by the general provisions of the Constitution of 1868 and subsequent statutes, but more directly by express legislative enactment. Revisal 1905, secs. 2107, 2108, 2116. Section 2107 provides that no contract between husband and wife made during coverture shall be valid to affect or charge any part of the wife's real estate or the accruing income thereof for a longer time than three years, etc., or to impair or change the body or capital of her present estate unless in writing, etc., the wife's privy examination taken, with an additional certificate of the examining (417) officer that the "same is not unreasonable or injurious to her," etc. Section 2108 provides that contracts between husband and wife not forbidden by the preceding section and not inconsistent with public policy are valid and subject to preceding section. Any married person may release or quitclaim dower, tenancy by the curtesy, and all other rights which they may respectively acquire or have acquired by *Page 350 
marriage in the property of the other, and such releases may be pleaded in bar of any action or proceeding for the recovery of the right so released. While the presence of a trustee is clearly dispensed with by these enactments, it will be noted that by section 2107, in order to bind the wife by contract with the husband which may affect or charge her real estate, etc., for a longer period than three years or to impair or charge the body or capital of her personal estate, the contract must be in writing, her privy examination taken and, in addition to the ordinary form, there must be the additional certificate that the same is not unreasonable or injurious to her, the section concluding as follows: "The certificate of the officer shall state his conclusions, and shall be conclusive of the facts therein stated. But the same may be impeached for fraud as other judgments may be." Section 2108 in express terms subjects to requirements of 2107 contracts between husband and wife which purport to release or quitclaim dower, curtesy, and "all other rights which they might respectively acquire or may have acquired in the property of each other." While we have held that an allowance by way of alimony may be predicted in some instances on the capacity of the husband to labor, Muse v. Muse, 84 N.C. 35, this right of a married woman to support and maintenance is primarily a property right, or may be and very usually is made very largely dependent on amount of property owned by the husband. Taylor v. Taylor, 93 N.C. 418; Nelson on Divorce, secs. 908-909. Our decisions are to the effect that the identity of person between husband and wife in reference to their right to contract with each other is not further relaxed or affected than is specified and required by the Constitution and statutes (Armstrong v.(418) Best, 112 N.C. 59; Sims v. Ray, 96 N.C. 87), and this section 2108 by correct interpretation clearly contemplates that a deed of the kind presented here, "surrendering dower and all personal and property rights which she may have acquired against the person and property of her husband," shall only be upheld when it complies with the forms established and required by section 2107. On this ground, therefore, the ruling of the lower court holding that the instrument is void and of no effect on the rights of these parties is affirmed.
No error.
Cited: Pierce v. Cobb, 161 N.C. 303. *Page 351 
(419)