ANN ROSSELL PETERS,

*vs.*

DANIEL C. PETERS.

*New Castle, November 29, 1933.*

*David J. Reinhardt, Jr.,* and *James T. Mullin,* for complainant.

*James R. Morford,* of Marvel, Morford, Ward & Logan, for defendant.

THE CHANCELLOR: The first ground of demurrer is that equity is without jurisdiction because the complainant has a sufficient remedy at law. That the complainant, the wife, could not sue the defendant, her husband, for damages for breach of the contract here sought specifically to be enforced, is conceded by the solicitor for the defendant. *Plotkin v. Plotkin,* 2 *W. W. Harr.* (32 *Del.*) 455, 125 *A.* 455, settles that proposition so far as the Superior Court can settle it. Where is there then any remedy, not to say any sufficient remedy, at law for the complainant on the contract? The defendant answers by saying, her legal remedy is under the so-called non-support provisions of the Delaware statutes. *Revised Code* 1915, §§ 3034-3046. *Section* 3034 declares it to be a misdemeanor for any husband, without just cause, to refuse to support his wife in destitute or necessitous circumstances, or for any parent without lawful excuse to refuse to provide for the support and maintenance of his or her child under the age of sixteen

years, punishable by fine of not more than five hundred dollars or by imprisonment for not over one year. Instead of the imposition of fine or imprisonment, the court "having regard to the circumstances, and to the financial ability or earning capacity of the defendant," may make an order, subject to change from time to time, directing the defendant to pay a certain sum periodically for the support of the wife or child, and adopt measures for its enforcement. *Sections* 3037, 3040.

The support provisions supply to the wife no remedy at law for the enforcement of her contract by way of damages. That is apparent. It is apparent for three reasons. First, the action is a criminal one, in which the State of Delaware is the plaintiff. While the Court of General Sessions in *State v. McCullough*, 1 *Pennewill*, 274, 40 *A*. 237, 238, stated that a prosecution under the non-support statute "is not, strictly speaking, a criminal proceeding," yet the Supreme Court in *Donaghy v. State*, 6 *Boyce* (29 *Del.*) 467, 100 *A*. 696, distinctly held the offense to be a misdemeanor. The wife has no control over the prosecution for non-support. She cannot compel its institution. While she is the beneficiary of any order that may be made, yet the matter is one that lies in the domain of public concern and is so far treated as such that the State and not she controls the proceeding from beginning to end. Second, any order looking to the support of the wife or child, is made in the light of the circumstances and the financial ability or earning capacity of the defendant. As the terms of the order are thus not referable to any prior contract of the defendant for definition, the order cannot therefore be said in any sense to be in enforcement of a contract. Third, if the complainant should remove from the State of Delaware, the defendant could not then be prosecuted in this State for nonsupport [*Sweetman v. State*, 4 *W. W.* (34 *Del.*) *Harr.* 329, 152 *A*. 588], which again emphasizes the fact that the non-support proceedings are entirely dissociated from any consensual obligations of the defendant.

It is clear then that the complainant has no remedy whatever, not to speak of a sufficient remedy, at law upon the contract. The case of *McKinmon v. McKinmon,* 2 *Pa. Dist. & Co. R.* 108, is not in point, because it appears to have been an attempt in equity specifically to enforce the marriage contract between the parties. The other case cited by the solicitor for the defendant in support of his contention under the present head is *Thompson v. Thompson,* 178 *App. Div.* 610, 165 *N. Y. S.* 892. That case is of no pertinency for the reason that under the then existing *Married Women's Act* of New York a wife was enabled to sue her husband at law. It is, as before stated, conceded that she cannot do so in this State.

2. It is next objected that the agreement is not enforceable either in law or equity. That it is not enforceable at law is clear. But it does not follow that it is not enforceable in equity. The lack of a remedy at law in actions between husband and wife is the familiar ground upon which jurisdiction in equity in such cases is based. The conception of the unity of the married state which in earlier times was recognized with all its consequent incidents, has in more modern times been very much impaired by statutory enactments. But even when the conception was at the heighth of its acceptance, equity never permitted it to be carried so far as to prevent a wife from being a party complainant against her husband in proper case. Suits in equity by a married woman against her husband to establish her rights in her separate estate, are illustrative to show that equity on proper occasion recognizes the duality of husband and wife.

If, therefore, the complainant in this cause cannot maintain her bill against her husband, it is not because, as a corollary to the doctrine of unity between husband and wife, she is incapable in contemplation of equity of being a party complainant against him.

3. The real objection, based on the conception of unity of husband and wife, which the defendant raises against the

bill goes deeper than what has just been mentioned. It goes to the point that as the parties to the contract are husband and wife, they are incapable of contracting one with the other. It is not then a question of incapacity on the part of the complainant to sue her husband in equity; but rather a question of her capacity to contract with him.

The defendant concedes that if the contract had made use of a trustee as a third party to its terms to whom the husband's obligations were to be rendered, it would be a good enforceable contract. But a trustee was not interposed between the principal parties. The contract was directly between husband and wife. It was therefore void, it is argued, in equity as well as at law, and as incapable of enforcement in the one jurisdiction as in the other.

That the contention thus raised is without merit according to English authority, is apparent from the decisions of the Vice-Chancellor in *Vansittart v. Vansittart,* 4 *D. & G.* 62, 70 *Eng. Reprint* 26, decided in 1858. That was a bill for specific performance of a contract of separation entered into directly by a husband and wife. The Vice-Chancellor in holding the contract to be not void assimilated the case in principle to one where the wife contracts with her husband with respect to her separate estate, which has been recognized as a case in exception to the general rule forbidding contracts between a husband and wife. His language was:

"As a general rule, it is, as every one knows, a well-settled doctrine both at law and in equity that there can be no contract between husband and wife; but this court recognizes one well-known exception to that rule. It is settled that a wife can contract with her husband in respect of her separate estate. And I apprehend that the exception does not stop there; but under any circumstances, when the wife is put in such a position that she can be regarded, for the purposes of the contract, as a *feme sole*, the general rule ceases to have this direct application. * * * But it appears to me that, in reference to any matter as to which a wife is placed in the position of a *feme sole*, and not merely in reference to her sepa-

rate estate, she may be also in a position to enter into a contract with her husband." See also *McGregor v. McGregor,* 21 G. B. D. 424 (1888).

In America, the authorities are by no means harmonious upon the proposition that articles of separation entered into between husband and wife directly, without the intervention of a trustee, are valid and enforceable. An examination of the cases shows that it is among the earlier of them that a strict adherence to the principle is more frequently found, that contracts of the pending sort are void if made directly by husband and wife. By 1889, however, the Supreme Court of Pennsylvania in *Com. v. Richards,* 131 *Pa.* 209, 18 *A.* 1007, stated it as the undoubted weight of authority "that there may be a valid agreement for the separation directly between husband and wife, without the intervention of a trustee, which the courts will sanction." In *Edleson v. Edleson,* 179 *Ky.* 300, 200 *S. W.* 625, 630, 2 *A. L. R.* 689 (1918), the Supreme Court of Kentucky used the following language:

"A good while ago it was required to make such a contract enforceable in equity that a trustee for the wife should be created and the contract made with him for the benefit of the wife. Since then, however, the doctrine has been established that, where a contract has been made between husband and wife which would have been good at law if it had been made with a trustee for the wife, it will be sustained in equity, though there was no trustee, if it does not affect the rights of third persons."

See also *Biddle v. Biddle,* 104 *N. J. Eq.* 313, 145 *A.* 639; *Devine v. Devine,* 89 *N. J. Eq.* 51, 104 *A.* 370; *Buttlar v. Buttlar,* 71 *N. J. Eq.* 671, 65 *A.* 485; *Carey v. Mackey,* 82 *Me.* 516, 20 *A.* 84, 9 *L. R. A.* 113, 17 *Am. St. Rep.* 500. Cases holding to the contrary of the foregoing as also others in support of it, may be cited. It is not deemed necessary however to cite and discuss the numerous cases bearing on the two sides of the question. It is sufficient for the present purpose to say that the language quoted above from the

Pennsylvania and Kentucky courts of last resort appears to me to be accurate in its statement that the rule announced by those courts is sustained by the weight of authority.

4. It is next argued that there is no consideration to support the defendant's promise to pay support money to his wife. With this I cannot agree. The husband's duty to support his wife and her right to compel him to do so in one way or another coupled with her promise to demand no more in the way of support than the contract calls for, are sufficient to constitute a consideration for his promise. *Aspinwall v. Aspinwall,* 49 *N. J. Eq.* 302, 24 *A.* 926.

5. It is contended further that the contract for the payments of the stipulated monthly sums cannot be enforced because in that regard the contract is wholly executory. That a contract is executory can be no reason for denying to it the remedy of specific performance. Indeed there can be no occasion for specific performance if the contract be an executed one. The remedy implies that there is a contractual obligation to be performed in the future, an executory one, which the defendant engaged but has refused to carry out. The case cited in support of the contention under this head, viz., *Atkins v. Atkins,* 195 *Mass.* 124, 80 *N. E.* 806, 11 *L. R. A.* (*N. S.*) 273, 122 *Am. St. Rep.* 221, does not sustain it. All that that case stands for in the present connection is that executory terms of a contract which are void will not be enforced. It was the invalidity of the terms, not their executory character, which made them improper to be enforced. The contract in that case was between a husband, in the role of a trustee, with his wife. It was not a separation agreement.

6. The next ground of demurrer is that the contract is void as against public policy. The law, it is said, frowns on all agreements that contemplate the living apart of husbands and wives. The provisions in the divorce statute of this state for a divorce *a mensa et thoro,* the marriage tie remaining unloosed, is somewhat at odds with the law's

supposed aversity to separation. See *Carey v. Mackey,* 82 *Me.* 516, 20 *A.* 84, 9 *L. R. A.* 113, 17 *Am. St. Rep.* 500. But aside from that, it is now the well established view in most American jurisdictions, as it is in England, that considerations of public policy will not serve to condemn as void all separation agreements between husband and wife. When a separation has already been effected or is in immediate contemplation, it is not contrary to public policy to allow the parties to define by contract their mutual rights and obligations with respect to property and to the wife's support. *Walker v. Walker,* 9 *Wall.* 743, 19 *L. Ed.* 814; *Daniels v. Benedict,* (*C. C. A.*) 97 *F.* 367; *Wilson v. Wilson,* 1 *H. L. Cas.* 538; *Besant v. Wood, L. R.* 12 *Ch. Div.* 605. Cases from most of the American states may be cited to the same effect. New Hampshire (*Hill v. Hill,* 74 *N. H.* 288, 67 *A.* 406, 12 *L. R. A.* (*N. S.*) 848, 124 *Am. St. Rep.* 966) and North Carolina (*Collins v. Collins,* 62 *N. C.* 153, 93 *Am. Dec.* 606), appear to be the only jurisdictions remaining in this country that, in the absence of statute, adhere to the old doctrine that articles of separation between husband and wife are in violation of public policy. In the latter state, the judicial view has been overthrown by statutory enactments. *Archbell v. Archbell,* 158 *N. C.* 408, 74 *S. E.* 327, *Ann. Cas.* 1913D, 261. Upon the point of public policy, the validity of the contract cannot of course be concerned with the circumstance of the presence or absence of a trustee as a party to the agreement. Cases therefore in which the intrumentality of a trustee has been employed to effectuate the separation plan are equally in point, upon the question of public policy, with those cases in which the agreement has been made directly between the husband and wife without the interposition of a third party. Cases of these two sorts are to be found in great number in the reports and I feel no disposition to extend this opinion with citations beyond those already above referred to.

It is further contended under this head that even though public policy no longer discountenances separation

agreements as a general proposition, yet if the separation was not due to adequate reasons, was not necessary to the health or happiness of one of the parties, public policy will withdraw its general indulgence and resume its former attitude of avoiding disapproval of the agreement. *Stebbins v. Morris*, 19 *Mont.* 115, 47 *P.* 642, is cited in support of this contention. That case came before the court on demurrer. The complainant showed an agreement simply "not to live together as a man and wife any longer." The court sustained the demurrer, holding that separation agreements, to be enforceable, must be founded in the necessity of one or the other of the parties for health or happiness, must not be future in its operation; and that either mere willingness to live apart, or caprice or reckless disregard of marital obligations, or the facilitation of a divorce, if any of them be the reason for the separation, will render an agreement under it void. The bare allegation that there was an agreement simply "not to live together," the court considered not enough to satisfy the tests which I have just described as laid down by it as necessary in such cases. Conceding that case to contain a correct definition of the law as regards the tests which contracts of the present sort, if they are enforceable, must meet, yet the difference between it and the instant one is apparent. Here the parties by their contract recite that they had separated before the contract was entered into "as a result of disagreements between them"; and the bill alleges that their differences and disagreements had continued through a period of three years; there, it was simply that they agreed "not to live together." The allegation in the pending bill satisfies every one of the tests laid down in *Stebbins v. Morris, supra,* unless it be that a prolonged condition of disagreements in the home cannot be said to be injurious to the health or inimical to the happiness of either or both of the spouses, a proposition which I am unable to accept. The case of *Baum v. Baum*, 109 *Wis.* 47, 85 *N. W.* 122, 53 *L. R. A.* 650, 83 *Am. St. Rep.* 854, is also

cited in the present connection. But that case can hardly be said to be in point, because it appears to be one where the court was asked to enforce a separation agreement when the parties were living together. I say this because the court distinguished a prior case in its own jurisdiction, where a separation agreement was enforced as valid which was entered into after the separation became an accomplished fact. Such is the case now before me.

7. Lastly it is argued that this is not a proper case calling for the exercise of discretion in favor of specific performance. If it be so, it is not because of anything appearing on the face of the bill. The case being on demurrer, the bill should not be dismissed because of the contention made under this last head.

Order overruling the demurrer.