WALTER HAGEN v. JOHN I. VINEY, Judge, *et al.*

169 So. 391.
Division B.
Opinion Filed June 30, 1936.
Rehearing Denied July 24, 1936.

748

*Kelly & Casler,* for Petitioner;
*Altman & Cooper,* for Respondents.

TERRELL, J.—Petitioner, Walter Hagen, and respondent, Edna C. Hagen, were married in 1923, in the State of New Jersey and lived together as man and wife until 1927. In the year last named they separated and though not divorced they have continued to live apart. In July, 1933, they entered into a separation agreement in writing whereby certain property rights and differences between them were amicably adjusted and Walter Hagen agreed to pay to Edna C. Hagen on or before the tenth business day of each month thereafter the sum of Two Hundred Fifty Dollars ($250.00) for the balance of her life or until she should remarry.

It was also provided in the separation agreement that in default of making any of the monthly payments as agreed, then the sum payable for that month and for each month thereafter until such default should be made good was to be the sum of Five Hundred Dollars ($500.00), such sum or sums to be in discharge and satisfaction of all claims for alimony, suit money, or other charges for support and maintenance due by Walter Hagen to Edna C. Hagen.

Payments were promptly made under the separation agreement to September 10, 1934, when default was made in the latter payment and later in the payments which became due on the tenth day of October, November, and December, 1934, and the tenth day of January and February, 1935. The total amount of these defaults was the sum of $2500.00.

In March, 1935, Edna C. Hagen filed her bill of complaint for specific performance of the separation agreement in which she set up the foregoing facts and prayed that an account be stated between her and the defendant, Walter Hagen, and that defendant be decreed to pay whatever sum shall be found due, that it be determined what sum she should have for future support, and that said amounts be decreed to be paid her, together with costs of suit including a reasonable attorney's fee, temporary alimony, and suit money. The bill also prayed for a writ of *ne exeat* against Walter Hagen to prevent him from departing beyond the boundary of the state without first entering into bond as fixed by the court to comply with such order and decree as may be entered against him in the cause.

The defendant was personally served and moved to dismiss the bill of complaint and discharge the writ of *ne exeat*. Both motions were denied and in November, 1935, Walter Hagen, as petitioner, filed in this Court his suggestion or petition for writ of prohibition. A rule *nisi* was issued directed to the Judge of the Circuit Court commanding him to show cause why a writ of prohibition absolute should not be issued prohibiting him from further assuming jurisdiction in the cause. The respondent demurred to the suggestion for prohibition and the cause now comes on to be disposed of on that demurrer.

It is shown that Walter Hagen and his wife, Edna C.

Hagen, are citizens and are residents of the State of New Jersey but at the time the suit for specific performance of the separation agreement was brought they were sojourners in the State of Florida. The defendant was served personally and appeared generally in the cause. Under such circumstances has a court of equity in this state jurisdiction of the suit for specific performance of the separation agreement?

A suit for specific performance of a separation agreement, like one for debt, contract, and other matters relating to the person or personal property that might have happened anywhere, are transitory and may be instituted where the defendant is found and can be served with process. In such cases it is not essential that the parties be residents of the State of Florida. McLeod v. Connecticut & P. R. R. Co., 58 Vt. 727, 6 Atl. 648; 7 R. C. L. 1935, Continuing Supp. 319.

It is settled law that courts of one state are not required to assume justification of causes between non-residents arising in other jurisdictions though by the rule of comity rather than that of strict right they generally do so. After all is said the question of jurisdiction in transitory actions between non-residents is one of discretion on the part of the court assuming it and no rule has yet been promulgated to guide that discretion. The chancellor should be guided by the applicable rules in such cases but the record here reveals nothing to reverse him on this point.

On the question of whether or not this cause is one of equitable cognizance the bill of complaint impels an affirmative answer. It alleges the marriage of the parties, the presence of the defendant within the jurisdiction of the court, that complainant and defendant are living apart and have been since 1927, that they are living apart from

defendant's choice, that complainant is now and at all times has been willing to live with defendant, that she has no means of support except such as is contributed to her by defendant, that defendant is a professional golfer, and has for many years earned large sums of money, that his income from his profession and in royalties from business concerns for the use of his name in advertising their goods is in excess of $50,000.00 per year, that he has no other property to the knowledge of complainant that could be reached to satisfy the separation agreement, that he is amply able to pay all amounts due on the separation agreement, that the business of defendant is such that he is constantly traveling throughout the United States and Canada and seldom remains at one place long enough to enable complainant to serve process upon him, and that when he is in the State of New Jersey he conceals his whereabouts so that it is impossible for her to serve process on him for the purpose of compelling him to support her as he is required to do by law, that though he knows her necessities he has refused and failed to contribute anything to her support since his first default, and that he is about to remove from the State of Florida taking his property with him, in which event she will be left without any security whatever for the amount past due under the separation agreement or any amount that may be decreed by the court to be paid her for support and maintenance.

Separation agreements have generally been enforced in equity. The husband and wife may by mutual assent live apart but this does not relieve the husband of the wife's support. Courts of equity will not enforce an agreed separation but stipulations in such an agreement to contribute money to the wife's support will be enforced. Gellemore v. Gellemore, 94 Fla. 516, 114 So. 371; Allen v. Allen, 111

Fla. 733, 150 So. 237; Peters v. Peters (Del. Ch.) 169 Atl. 298; Corrigan v. Corrigan, 115 N. J. E. 49, 169 Atl. 555; Aspinwall v. Aspinwall, 49 N. J. E. 302, 24 Atl. 926.

In the last cited case the New Jersey Court held that stipulations for the support of the wife who is living apart from her husband with his assent have always been regarded as enforceable in a court of equity in that state. They are so enforced on the theory that there is nothing illegal in man and wife living apart by mutual consent but that does not relieve the husband for the wife's support. When separation, as in this case, has been effected or is in immediate contemplation, it is not against public polity to allow the parties to define by contract their mutual rights and obligations respecting property and wife's support. Peters v. Peters, *supra.*

The separation agreement in question shows on its face that it was given in lieu of dower, separate maintenance, attorney's fees, suit money *pendente,* and all other allowances to complainant as defendant's wife. Her right of recovery is, therefore, limited to the amounts stated in the separation agreement so that part of the bill of complaint setting up other claims may be eliminated by appropriate proceedings.

It is contended that the separation agreement can not be enforced because it was a modification of a former agreement of like effect but which is not attached to the bill of complaint nor the terms thereof set out therein nor is it shown that there was any consideration for the latter agreement.

We fail to find any merit to this contention. The separation agreement shows on its face that it was intended as a new agreement in substitution of the old one. If consideration is necessary for such an agreement its recita-

tions are ample for that purpose. Consideration in this kind of a contract may rest in the mutual assent of the parties to the new agreement. The husband's duty to support his wife and her right to compel him to do so and demand no more than the contract calls for are ample consideration for a contract like this. In other words, no consideration extraneous to the stipulation and the execution of the agreement of the wife to live separate is necessary. Peters v. Peters, *supra;* 13 C. J. 592, Sec. 608.

It is quite true that the *lex loci contractus* governs the construction of this as it does all contracts but the separation agreement sued on is valid in this state and being so it is presumably valid in the state where executed which need not be alleged. In the interpretation of such contracts the law of the State where the contract was executed is presumed to be the same as the law of the state where it is presented to be construed until shown by allegation and proof to be otherwise. Bemis v. McKenzie, 13 Fla. 553; 10 R. C. L. 890, Sec. 39; Commonwealth of Pennsylvania v. Fidelity & Deposit Co. of Maryland, 143 Md. 29, 121 Atl. 920.

This brings us to the question of what effect, if any, Chapter 16780, Acts of 1935, has on the separation agreement.

Chapter 16780, Acts of 1935, authorizes the Circuit Courts of this state to "modify or confirm payments for, or in lieu of, separate support, maintenance, or alimony in accordance with voluntary agreements between husband and wife, or pursuant to decree of court of competent jurisdiction." The provisions of this Act cannot be availed of except by affirmative action on the part of the party interested.

By its terms this Act purports to be both prospective and retroactive. If valid either party to a separation agreement

may take advantage of it but it provides in terms how this may be done and the manner in which the court may proceed to award its benefits. Neither party hereto has taken any affirmative action to avail himself of the privileges of this Act and until this has been done and the questions raised and adjudicated by the trial court any expression as to the effect or validity of it by this Court would be premature. There is nothing whatever in the record to show that either party hereto desires to take advantage of this Act and until that is done in due course we must decline to express any opinion as to its constitutionality or its effect on the separation agreement.

The concluding question we are importuned to answer is whether or not the writ of *ne exeat* was providently granted.

Sections 3184 and 3185, Revised General Statutes of 1920, Sections 4976 and 4977, Compiled General Laws of 1927, provide the conditions under which the writ of *ne exeat* shall issue in this state. In State, *ex rel.* Perky, v. Browne, 105 Fla. 631, 142 So. 247, this Court held the writ of *ne exeat* to be one in common use in equity. The authority to issue the writ is primarily based upon the inherent jurisdiction of a court of equity to prevent a person from leaving the jurisdiction until he gives security for his appearance or performance of a decree. It issues only on an equitable bill filed and it is not necessary that a subpoena in chancery be first served on the party or served simultaneously with the issuance of the writ.

In a note following Gilbert v. Colt, 1 Hopkins' Ch. (N. Y.) 496, 14 Am. Dec. 557, note pages 560 to 563 inclusive, the history and circumstances under which the writ of *ne exeat* will issue are fully discussed. It is there said to be a writ issuing out of a court of equity on the petition

of a complainant having a clear equitable demand, to prevent the departure of a defendant who has sequestered his property and is about to leave the country. In its last analysis it is a writ to obtain equitable bail. As a prerequisite to its issue the debt must be due in equity and will not be permitted to collect a legal demand except in cases of accounting and in a few other cases of concurrent jurisdiction. The power to grant the writ is exercised with caution as it tends to abridge the liberty of the citizen. It can be issued only against those whose persons can be touched by the decree of the court either by attachment or an execution.

To warrant the issuance of the writ these elements must appear; (1) There is a definite amount actually due; (2) That it is an equitable demand, upon which recovery cannot be had at law except in account or one of the cases of concurrent jurisdiction; and (3) The defendant is about to quit the country to avoid payment. The writ acts on the person who need not be a citizen or subject, need not be in the state when it is applied for, need not be a permanent resident of the state at the time applied for, and the subject matter of the bill of complaint need not be in the state. It is immaterial whether the defendant is actually domiciled in the state or is here temporarily. The debt involved may have been contracted elsewhere. Note to Gilbert v. Colt, *supra*.

In the case at bar the defendant was served with process and appealed in this state where he was temporarily sojourning, there was an equitable demand due, and it was alleged that he was leaving the state with his property. He was living separate from respondent by choice, was refusing to contribute to her support, though having ample means to do so, he was going constantly from state to

state and country to country, secreting himself and property and making it difficult if not impossible at times to be reached by legal process.

Courts are designed to aid those who have wrongs imposed on them rather than assist those charged with the wrong who by the migratory character of their business are afforded an easy means to elude the law's processes. For all the record discloses this cause was *bona fide* grounded and when this is the case access to the court's process should be easily available. Those entitled to and seeking it should not be compelled to resort to a species of incantation, catch as catch can, or to the practice of the arts of Delilah, to effectuate it.

It follows that the demurrer to the petition for writ of prohibition must be and is hereby sustained and the rule *nisi* issued herein discharged.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and DAVIS, J. J., concur in the opinion and judgment.

BROWN, J., dissents.